Matter of Soraya S. (Kathryne T.)???
Soraya S., Matter of (Kathryne T.)???
Kathryne T. (Matter of Soraya S.)???
2018 NYSlipOp 00993
Matter of Soraya S. (Kathryne T.)???
Soraya S., Matter of (Kathryne T.)
[\M\N NYS3d \M\N]

In the Matter of Soraya S., Respondent Appellant. Kathryne T., Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

159 
CAF 16-01436
PRESENT: CENTRA, J.P., CARNI, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ. 

IN THE MATTER OF SORAYA S. 
------------------------------------------------ 
CHAUTAUQUA COUNTY DEPARTMENT OF SOCIAL SERVICES, 
PETITIONER-RESPONDENT; 
 MEMORANDUM AND ORDER
KATHRYNE T., RESPONDENT-APPELLANT, 
AND TIMOTHY S., RESPONDENT. 

D.J. & J.A. CIRANDO, ESQS., SYRACUSE (ELIZABETH deV. MOELLER OF COUNSEL), FOR RESPONDENT-APPELLANT.

REBECCA L. DAVISON-MARCH, MAYVILLE, FOR PETITIONER-RESPONDENT. 

MARY SPEEDY HAJDU, ATTORNEY FOR THE CHILD, LAKEWOOD. 

 Appeal from an order of the Family Court, Chautauqua County (Judith S. Claire, J.), entered June 15, 2016 in a proceeding pursuant to Social Services Law 384-b. The order, inter alia, determined that respondent Kathryne T. permanently neglected the subject child. 

 It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

 Memorandum: Respondent mother appeals from an order that, inter alia, terminated her parental rights with respect to the subject child on the ground of permanent neglect and transferred guardianship and custody of the child to petitioner. Contrary to the mother's contention, petitioner established by clear and convincing evidence that it made diligent efforts to encourage and strengthen the relationship between the mother and the child (see Social Services Law 384-b [7] [a]). The evidence adduced at the fact-finding hearing established that petitioner, inter alia, provided mental health care referrals, parenting classes, and transportation or bus tickets and/or mileage reimbursement to counseling and the child's medical appointments, and scheduled and coordinated visitation (see Matter of Joshua T.N. [Tommie M.], 140 AD3d 1763, 1763 [4th Dept 2016], lv denied 28 NY3d 904 [2016]; Matter of Jerikkoh W. [Rebecca W.], 134 AD3d 1550, 1550-1551 [4th Dept 2015], lv denied 27 NY3d 903 [2016]).

 In addition, we conclude that, despite those diligent efforts, the mother failed to plan for the future of the child (see Matter of Burke H. [Richard H.], 134 AD3d 1499, 1500-1501 [4th Dept 2015]). "It is well settled that, to plan substantially for a child's future, the parent must take meaningful steps to correct the conditions that led to the child's removal' " (Jerikkoh W., 134 AD3d at 1551). Here, Family Court required the mother to complete various programs and to attend regularly appointments for mental health treatment, but she failed to do either. She voluntarily ceased attending her court-ordered attachment-based therapy and was not engaged or cooperative when she did attend. The mother also missed more than two-thirds of the child's medical appointments and failed to take advantage of numerous visitation opportunities. To the extent that the mother participated in any of the recommended or ordered programs or services, she "did not successfully address or gain insight into the problems that led to the removal of the child and continued to prevent the child's safe return" (Matter of Giovanni K., 62 AD3d 1242, 1243 [4th Dept 2009], lv denied 12 NY3d 715 [2009]; see Matter of Rachael N. [Christine N.], 70 AD3d 1374, 1374 [4th Dept 2010], lv denied 15 NY3d 708 [2010]), asserting that she did not "need to be taught how to be a parent."

 Finally, the record supports the court's decision to terminate the mother's parental rights rather than to grant a suspended judgment (see Matter of Cyle F. [Alexander F.], 155 AD3d 1626, 1627-1628 [4th Dept 2017]; Matter of Kendalle K. [Corin K.], 144 AD3d 1670, 1672 [4th Dept 2016]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Kotecki's Grandview Grove Corp. v Acadia Ins. Co.???
Acadia Ins. Co., Kotecki's Grandview Grove Corp. v???
2018 NYSlipOp 00994
Kotecki's Grandview Grove Corp. v Acadia Ins. Co.???
Kotecki's Grandview Grove Corp. v Acadia Ins. Co.
[\M\N NYS3d \M\N]

 Kotecki's Grandview Grove Corp., Respondent Appellant, v Acadia Insurance Company, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

163 
CA 17-01520 
PRESENT: CENTRA, J.P., CARNI, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ. 
 
KOTECKI'S GRANDVIEW GROVE CORP.,
PLAINTIFF-RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
ACADIA INSURANCE COMPANY, DEFENDANT-APPELLANT, 
AND FIRST NIAGARA RISK MANAGEMENT, INC.,
DEFENDANT. 

GOLDBERG SEGALLA LLP, BUFFALO (BRIAN R. BIGGIE OF COUNSEL), FOR DEFENDANT-APPELLANT.

LAW OFFICE OF RALPH C. LORIGO, WEST SENECA (JON F. MINEAR OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Tracey A. Bannister, J.), entered February 27, 2017. The order denied the motion of defendant Acadia Insurance Company for summary judgment dismissing the amended complaint against it. 

 It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted and the amended complaint against defendant Acadia Insurance Company is dismissed.

 Memorandum: Plaintiff commenced this action to recover under an insurance policy issued by defendant Acadia Insurance Company (Acadia) for loss that it allegedly sustained in a "rain and/or windstorm." Plaintiff reported the loss to its insurance broker, defendant First Niagara Risk Management, Inc. (First Niagara). First Niagara prepared a property loss notice listing the date of loss as June 10, 2013. Acadia investigated the claim, partially denied it in October 2013, and reaffirmed that denial in February 2014. All of Acadia's correspondence listed the date of loss as June 10, 2013. The correspondence also advised plaintiff pursuant to New York insurance regulations that, in the event it wished to contest the denial, plaintiff was required by the policy to commence such an action within two years of the reported date of loss. On June 3, 2015, plaintiff commenced this action. During discovery, it was learned that the actual date of loss was May 28, 2013. In response to Acadia's notice to admit, plaintiff admitted that it noticed the damage to its property on May 28, 2013, that it contacted a roofing company on that date to repair the damage, and that it also contacted First Niagara on that date. Acadia then moved for summary judgment dismissing the amended complaint against it as time-barred.

 Supreme Court erred in denying the motion. Acadia met its initial burden of establishing that plaintiff's action was not commenced within two years of the date of loss as required by the policy (see Compis Servs. v Hartford Steam Boiler Inspection & Ins. Co., 272 AD2d 886, 887 [4th Dept 2000]; see generally Nowacki v Becker, 71 AD3d 1496, 1497 [4th Dept 2010]), and plaintiff failed to raise an issue of fact to defeat the motion (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Contrary to plaintiff's contention, it did not raise a triable issue of fact whether Acadia should be equitably estopped from relying on the limitations period provided in the policy. "Under the doctrine of equitable estoppel, a defendant is estopped from pleading a statute of limitations defense if the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (Richey v Hamm, 78 AD3d 1600, 1601-1602 [4th Dept 2010] [internal quotation marks omitted]; see Simcuski v Saeli, 44 NY2d 442, 449 [1978]). "A plaintiff seeking to apply the doctrine of equitable estoppel must establish that subsequent and specific actions by defendant[] somehow kept [him or her] from timely bringing suit' " (Putter v North Shore Univ. Hosp., 7 NY3d 548, 552 [2006]). Here, Acadia did nothing to keep plaintiff from commencing the suit in a timely manner. Although Acadia listed the date of loss incorrectly in its correspondence disclaiming coverage, that was the result of incorrect information provided by First Niagara, plaintiff's agent. In any event, plaintiff was always aware of the actual date of loss and that an action had to be commenced within two years of that date. Thus, plaintiff was not induced by Acadia's conduct to refrain from filing this suit in a timely manner.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Hobbs???
People v Hobbs (Joseph)???
Hobbs (Joseph), People v???
2018 NYSlipOp 00995
People v Hobbs???
People v Hobbs (Joseph)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Joseph C. Hobbs, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

171 
KA 17-00213 
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
JOSEPH C. HOBBS, DEFENDANT-APPELLANT. 
(APPEAL NO. 1.) 
 

LEANNE LAPP, PUBLIC DEFENDER, CANANDAIGUA (MARY P. DAVISON OF COUNSEL), FOR DEFENDANT-APPELLANT.

R. MICHAEL TANTILLO, DISTRICT ATTORNEY, CANANDAIGUA (MELANIE J. BAILEY OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Ontario County Court (Frederick G. Reed, A.J.), rendered August 5, 2016. The judgment convicted defendant, upon his plea of guilty, of burglary in the third degree, criminal mischief in the third degree and criminal mischief in the fourth degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by vacating the sentence and as modified the judgment is affirmed, and the matter is remitted to Ontario County Court for further proceedings in accordance with the following memorandum: On appeal from two judgments convicting him upon his pleas of guilty of various offenses including burglary in the third degree (Penal Law 140.20) and two counts of attempted burglary in the second degree ( 110.00, 140.25 [2]), defendant contends in both appeal Nos. 1 and 2 that County Court failed to make an express determination whether he should be adjudicated a youthful offender, and that the court misapprehended its authority to grant him youthful offender status without the prosecution's consent. Although we reject defendant's first contention (cf. People v Henderson, 145 AD3d 1554, 1555 [4th Dept 2016]; People v Munoz, 117 AD3d 1585, 1585 [4th Dept 2014]), we agree with the second contention. 

 There is no dispute that defendant was eligible in both appeal No. 1 and appeal No. 2 for youthful offender treatment (see CPL 720.10). Nevertheless, based on comments that the court made in denying defendant's request for youthful offender treatment, it appears that the court believed that it was constrained to deny defendant's request simply because it was not contemplated by the People's plea offer. Stated otherwise, the record does not establish that the court denied defendant's request "on any basis other than that it was not part of the agreed-upon sentence" (People v Saunders, 146 AD3d 447, 448 [1st Dept 2017]). At no time did the court indicate that, in its view, defendant should not be adjudicated a youthful offender. 

 "Compliance with CPL 720.20 (1) requires the sentencing court to actually consider and make an independent determination of whether an eligible youth is entitled to youthful offender treatment" (People v Stevens, 127 AD3d 791, 791-792 [2d Dept 2015] [emphasis added]). Inasmuch as the Court of Appeals has held that CPL 720.20 (1) mandates "that there be a youthful offender determination in every case where the defendant is eligible, even where the defendant . . . agrees to forgo it as part of a plea bargain" (People v Rudolph, 21 NY3d 497, 501 [2013]), a new sentencing proceeding is required in both appeal Nos. 1 and 2. We therefore modify the judgments in both appeal Nos. 1 and 2 by vacating the sentence, and we remit each matter to County Court to make an independent determination whether defendant is a youthful offender before imposing a sentence. 

 Based on our determination, we do not address defendant's contention that the sentence imposed is unduly harsh and severe.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Hobbs???
People v Hobbs (Joseph)???
Hobbs (Joseph), People v???
2018 NYSlipOp 00996
People v Hobbs???
People v Hobbs (Joseph)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Joseph C. Hobbs, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

172 
KA 17-00214 
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
JOSEPH C. HOBBS, DEFENDANT-APPELLANT. 
(APPEAL NO. 2.)
 

LEANNE LAPP, PUBLIC DEFENDER, CANANDAIGUA (MARY P. DAVISON OF COUNSEL), FOR DEFENDANT-APPELLANT.

R. MICHAEL TANTILLO, DISTRICT ATTORNEY, CANANDAIGUA (MELANIE J. BAILEY OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Ontario County Court (Frederick G. Reed, A.J.), rendered August 5, 2016. The judgment convicted defendant, upon his plea of guilty, of attempted burglary in the second degree (two counts), petit larceny and criminal mischief in the second degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by vacating the sentence and as modified the judgment is affirmed, and the matter is remitted to Ontario County Court for further proceedings in accordance with the same memorandum as in People v Hobbs ([appeal No. 1] AD3d [Feb. 9, 2018] [4th Dept 2018]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Jemison???
People v Jemison (Rondell)???
Jemison (Rondell), People v???
2018 NYSlipOp 00997
People v Jemison???
People v Jemison (Rondell)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Rondell Jemison, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

173 
KA 16-00798 
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
RONDELL JEMISON, DEFENDANT-APPELLANT. 
 

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (NICHOLAS P. DIFONZO OF COUNSEL), FOR DEFENDANT-APPELLANT. 

JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (DANIEL J. PUNCH OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Erie County (Penny M. Wolfgang, J.), rendered April 11, 2016. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

 Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law 265.03 [3]), defendant contends that Supreme Court erred in refusing to suppress a handgun seized by police officers after a search of the vehicle in which he was a passenger and his subsequent statements to the police. Specifically, defendant contends that the court erred in determining that the officers had probable cause to search the vehicle inasmuch as the officers' testimony at the suppression hearing was incredible. We reject defendant's contention.

 At the suppression hearing, two officers testified that they were riding together in a patrol car when they observed a parked vehicle that was blocking a portion of a driveway, which constitutes a parking violation. The vehicle was running and had partially opened windows. When the officers approached, they smelled the odor of freshly burnt marihuana emanating from the vehicle. As defendant correctly concedes, the " odor of marihuana emanating from a vehicle, when detected by an officer qualified by training and experience to recognize it, is sufficient to constitute probable cause to search a vehicle and its occupants' " (People v Hogan, 136 AD3d 1399, 1399 [4th Dept 2016], lv denied 27 NY3d 1070 [2016]). One of the officers asked whether anyone had been smoking marihuana, and defendant answered that he had been doing so, and that the marihuana was located in the center console of the vehicle. The officers testified that, upon searching the vehicle they found a loaded semi-automatic handgun in a gym bag located in the vehicle's trunk. Upon realizing that the gun had been recovered by the police, defendant spontaneously admitted that the gun belonged to him. 

 It is well settled that, when reviewing a ruling after a suppression hearing, "[t]he court's credibility determination is entitled to great deference" (People v Coleman, 57 AD3d 1519, 1520 [4th Dept 2008], lv denied 12 NY3d 782 [2009]; see generally People v Prochilo, 41 NY2d 759, 761 [1977]). Here, we conclude that "[t]he police officer[s'] testimony at the suppression hearing does not have all appearances of having been patently tailored to nullify constitutional objections . . . , and was not so inherently incredible or improbable as to warrant disturbing the . . . court's determination of credibility" (People v Walters, 52 AD3d 1273, 1274 [4th Dept 2008], lv denied 11 NY3d 795 [2008] [internal quotation marks omitted]). We therefore find no basis in the record for disturbing the court's determination that the officers had probable cause to search the vehicle (see People v Ricks, 145 AD3d 1610, 1611 [4th Dept 2016], lv denied 29 NY3d 1000 [2017]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Varin???
People v Varin (Seles)???
Varin (Seles), People v???
2018 NYSlipOp 00998
People v Varin???
People v Varin (Seles)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Seles Varin, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

174 
KA 16-00086 
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
SELES VARIN, DEFENDANT-APPELLANT. 
 

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (KIMBERLY F. DUGUAY OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 

 Appeal from an order of the Monroe County Court (James J. Piampiano, J.), entered December 17, 2015. The order determined that defendant is a level two risk pursuant to the Sex Offender Registration Act. 

 It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

 Memorandum: Defendant appeals from an order determining that he is a level two risk pursuant to the Sex Offender Registration Act ([SORA] Correction Law 168 et seq.). Defendant contends that the People failed to notify defendant 10 days prior to the SORA hearing that they intended to seek a determination different from that recommended by the Board of Examiners of Sex Offenders (Board), as required by Correction Law 168-n (3). We reject that contention inasmuch as the record establishes that the People did not seek a determination different from that recommended by the Board. Rather, the People sought a determination that defendant is a level two risk, as recommended by the Board. Moreover, even if County Court erred in assessing points under risk factors 3 and 7 and defendant was therefore a presumptive level one risk, the court determined, in the alternative, that an upward departure from a presumptive level one classification was warranted. We conclude that the determination to grant an upward departure was "based on clear and convincing evidence of aggravating factors to a degree not taken into account by the risk assessment instrument" (People v Sherard, 73 AD3d 537, 537 [1st Dept 2010], lv denied 15 NY3d 707 [2010]), including, inter alia, "the quantity and nature of the child pornography used by defendant, the lengthy period of time over which he collected and viewed it, and the extremely young children depicted therein" (People v McCabe, 142 AD3d 1379, 1380-1381 [4th Dept 2016]).

 We reject defendant's alternative contention that the court erred in denying his request for a downward departure to level one. Defendant failed to prove, by a preponderance of the evidence, a "mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [2006]; see generally People v Wooten, 136 AD3d 1305, 1306 [4th Dept 2016]; People v Smith, 122 AD3d 1325, 1325-1326 [4th Dept 2014]). Contrary to defendant's contention, his acceptance of responsibility, engagement in sex offender treatment and lack of a prior criminal history were adequately taken into account in the risk assessment instrument (see People v Scone, 145 AD3d 1327, 1329 [3d Dept 2016]; People v DeDona, 102 AD3d 58, 71 [2d Dept 2012]; see also People v Jewell, 119 AD3d 1446, 1448-1449 [4th Dept 2014], lv denied 24 NY3d 905 [2014]). 

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Moore???
People v Moore (Christopher)???
Moore (Christopher), People v???
2018 NYSlipOp 00999
People v Moore???
People v Moore (Christopher)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Christopher L. Moore, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

178 
KA 15-01859 
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
CHRISTOPHER L. MOORE, DEFENDANT-APPELLANT.
 

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DAVID R. JUERGENS OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Victoria M. Argento, J.), rendered September 10, 2015. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

 Memorandum: Defendant appeals from a judgment convicting him upon his guilty plea of criminal possession of a weapon in the second degree (Penal Law 265.03 [3]). Contrary to defendant's contention, the record establishes that he knowingly, intelligently and voluntarily waived his right to appeal (see People v Lopez, 6 NY3d 248, 256 [2006]; People v Tantao, 41 AD3d 1274, 1274 [4th Dept 2007], lv denied 9 NY3d 882 [2007]). County Court "was not required to engage in any particular litany' in order to obtain a valid waiver of the right to appeal" (Tantao, 41 AD3d at 1274-1275, quoting People v Moissett, 76 NY2d 909, 910 [1990]). The valid waiver of the right to appeal encompasses defendant's challenge to the court's suppression ruling (see People v Kemp, 94 NY2d 831, 833 [1999]; People v Garner, 52 AD3d 1265, 1266 [4th Dept 2008], lv denied 11 NY3d 736 [2008]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Village of E. Aurora v East Aurora Union Free Sch. Dist.???
East Aurora Union Free Sch. Dist., Village of E. Aurora v???
2018 NYSlipOp 01000
Village of E. Aurora v East Aurora Union Free Sch. Dist.???
Village of E. Aurora v East Aurora Union Free Sch. Dist.
[\M\N NYS3d \M\N]

 Village of East Aurora, Respondent Appellant, v East Aurora Union Free School District, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

192 
CA 17-01412 
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ. 
 
VILLAGE OF EAST AURORA,
PETITIONER-PLAINTIFF-APPELLANT, 
 
 
 V MEMORANDUM AND ORDER
 
EAST AURORA UNION FREE SCHOOL DISTRICT, BOARD
OF EDUCATION OF EAST AURORA UNION FREE SCHOOL
DISTRICT, NEW YORK STATE EDUCATION DEPARTMENT
AND MARY ELLEN ELIA, COMMISSIONER, NEW YORK
STATE EDUCATION DEPARTMENT, 
RESPONDENTS-DEFENDANTS-RESPONDENTS.
 

BARTLO, HETTLER, WEISS & TRIPI, KENMORE (PAUL D. WEISS OF COUNSEL), FOR PETITIONER-PLAINTIFF-APPELLANT.

HARRIS BEACH PLLC, BUFFALO (RICHARD T. SULLIVAN OF COUNSEL), FOR RESPONDENTS-DEFENDANTS-RESPONDENTS EAST AURORA UNION FREE SCHOOL DISTRICT AND BOARD OF EDUCATION OF EAST AURORA UNION FREE SCHOOL
DISTRICT. 

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (LAURA ETLINGER OF COUNSEL), FOR RESPONDENTS-DEFENDANTS-RESPONDENTS NEW YORK STATE EDUCATION DEPARTMENT AND MARY ELLEN ELIA, COMMISSIONER, NEW YORK
STATE EDUCATION DEPARTMENT. 

 Appeal from a judgment (denominated order) of the Supreme Court, Erie County (E. Jeannette Ogden, J.), entered February 24, 2017 in a CPLR article 78 proceeding and a declaratory judgment action. The judgment, among other things, granted the motions of respondents- defendants to dismiss the amended petition-complaint. 

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

 Memorandum: We affirm for reasons stated in the decision at Supreme Court. We write only to note that the accrual date for purposes of the four-month statute of limitations is November 6, 2014 (see CPLR 217 [1]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

DePerno v DePerno???
2018 NYSlipOp 01001
DePerno v DePerno???
DePerno v DePerno
[\M\N NYS3d \M\N]

 Jane F. Deperno, Respondent Appellant, v Daniel W. Deperno, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

193.1 
CA 15-00543 
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ. 
 
JANE F. DEPERNO, PLAINTIFF-RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
DANIEL W. DEPERNO, DEFENDANT-APPELLANT.
 

DANIEL W. DEPERNO, DEFENDANT-APPELLANT PRO SE. 

LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (ERIN E. MCCAMPBELL OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Niagara County (Frank Caruso, J.), entered February 18, 2015. The order denied defendant's motion to vacate the parties' amended default judgment of divorce. 

 It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

 Memorandum: Defendant appeals from an order that denied his motion to vacate the parties' amended default judgment of divorce. We affirm. In his motion, defendant contended only that vacatur was warranted on the ground of excusable default, which requires a showing of both a reasonable excuse for the default and a meritorious defense (see CPLR 5015 [a] [1]; see e.g. Marshall v Marshall, 124 AD3d 1314, 1317 [4th Dept 2015]; Cavallaro v Cavallaro [appeal No. 2], 278 AD2d 812, 813 [4th Dept 2000], lv dismissed 96 NY2d 792 [2001]). Despite the well-established " liberal policy with respect to vacating default judgments in matrimonial actions' " (Telly v Telly, 242 AD2d 928, 928 [4th Dept 1997]), "it is well settled that [t]he determination of whether . . . to vacate a default . . . is generally left to the sound discretion of the court' " (Mills v Mills, 111 AD3d 1306, 1307 [4th Dept 2013], lv dismissed 22 NY3d 1167 [2014]). Under the circumstances of this case, we conclude that Supreme Court did not abuse its discretion in determining that defendant did not establish a reasonable excuse for the default or a meritorious defense.

 We have reviewed defendant's remaining contentions and conclude that they lack merit.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Quinones???
People v Quinones (Wilbert)???
Quinones (Wilbert), People v???
2018 NYSlipOp 01002
People v Quinones???
People v Quinones (Wilbert)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Wilbert Quinones, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

196 
KA 15-00657 
PRESENT: WHALEN, P.J., CENTRA, CARNI, NEMOYER, AND CURRAN, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
WILBERT QUINONES, ALSO KNOWN AS WILBERT QUINONES
MEDINA, DEFENDANT-APPELLANT.
 

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DAVID R. JUERGENS OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (STEPHEN X. O'BRIEN OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered October 20, 2014. The judgment convicted defendant, upon his plea of guilty, of manslaughter in the first degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

 Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of manslaughter in the first degree (Penal Law 125.20 [1]). Defendant contends that his oral and written waivers of the right to appeal do not bar his challenge to the severity of his sentence. We conclude that the record establishes that defendant knowingly, voluntarily and intelligently waived the right to appeal (see People v Ramos, 7 NY3d 737, 738 [2006]; People v Morales, 148 AD3d 1638, 1639 [4th Dept 2017], lv denied 29 NY3d 1083 [2017]; see generally People v Lopez, 6 NY3d 248, 256 [2006]), and that valid waiver encompasses his challenge to the severity of the sentence (see generally People v Lococo, 92 NY2d 825, 827 [1998]; People v Hidalgo, 91 NY2d 733, 737 [1998]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Brass???
People v Brass (Jeremie)???
Brass (Jeremie), People v???
2018 NYSlipOp 01003
People v Brass???
People v Brass (Jeremie)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Jeremie S. Brass, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

198 
KA 16-01807 
PRESENT: WHALEN, P.J., CENTRA, CARNI, NEMOYER, AND CURRAN, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V ORDER
 
JEREMIE S. BRASS, DEFENDANT-APPELLANT.
 

LEANNE LAPP, PUBLIC DEFENDER, CANANDAIGUA (ROBERT TUCKER OF COUNSEL), FOR DEFENDANT-APPELLANT. 

R. MICHAEL TANTILLO, DISTRICT ATTORNEY, CANANDAIGUA (JAMES B. RITTS OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Ontario County Court (Craig J. Doran, J.), rendered July 27, 2015. The judgment convicted defendant, upon his plea of guilty, of course of sexual conduct against a child in the first degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Joubert???
People v Joubert (Jose)???
Joubert (Jose), People v???
2018 NYSlipOp 01004
People v Joubert???
People v Joubert (Jose)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Jose L. Joubert, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

200 
KA 15-00424 
PRESENT: WHALEN, P.J., CENTRA, CARNI, NEMOYER, AND CURRAN, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
JOSE L. JOUBERT, DEFENDANT-APPELLANT.
 

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (JOSEPH R. PLUKAS OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Douglas A. Randall, J.), rendered December 9, 2014. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

 Memorandum: Defendant appeals from a judgment convicting him upon a plea of guilty of criminal possession of a weapon in the second degree (Penal Law 265.03 [3]). Contrary to defendant's contention, the waiver of the right to appeal was knowingly, intelligently, and voluntarily entered (see People v Goodwin, 147 AD3d 1352, 1352 [4th Dept 2017], lv denied 29 NY3d 1032 [2017]; see generally People v Sanders, 25 NY3d 337, 340-341 [2015]). County Court ensured that defendant understood that "the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty" (People v Lopez, 6 NY3d 248, 256 [2006]; see People v Brand, 112 AD3d 1320, 1321 [4th Dept 2013], lv denied 23 NY3d 961 [2014]). Contrary to defendant's contention, the court was not required to advise defendant that the waiver of the right to appeal encompassed the court's suppression ruling (see Brand, 112 AD3d at 1321; see generally People v Kemp, 94 NY2d 831, 833 [1999]), and his challenge to the adverse suppression ruling is foreclosed by the valid waiver of the right to appeal (see Kemp, 94 NY2d at 833; People v Carter, 147 AD3d 1540, 1540 [4th Dept 2017], lv denied 29 NY3d 1030 [2017]). We agree with defendant, however, that the waiver of the right to appeal does not encompass his challenge to the severity of the sentence. Although "it is evident that defendant waived [his] right to appeal [his] conviction, there is no indication in the record that defendant waived the right to appeal the harshness of [his] sentence" (People v Maracle, 19 NY3d 925, 928 [2012]; see People v Gang, 145 AD3d 1566, 1566-1567 [4th Dept 2016], lv denied 29 NY3d 997 [2017]). Nevertheless, we reject defendant's contention that his sentence is unduly harsh and severe.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

People v Sapetko???
People v Sapetko (Matthew)???
Sapetko (Matthew), People v???
2018 NYSlipOp 01005
People v Sapetko???
People v Sapetko (Matthew)
[\M\N NYS3d \M\N]

The People of the State of New York, Respondent Appellant, v Matthew Sapetko, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

205 
KA 16-00717 
PRESENT: WHALEN, P.J., CENTRA, CARNI, NEMOYER, AND CURRAN, JJ. 
 
THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
MATTHEW SAPETKO, DEFENDANT-APPELLANT.
 

CATHERINE H. JOSH, ROCHESTER, FOR DEFENDANT-APPELLANT. 

GREGORY J. MCCAFFREY, DISTRICT ATTORNEY, GENESEO (JOSHUA J. TONRA OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Livingston County Court (Robert B. Wiggins, J.), rendered September 22, 2015. The judgment convicted defendant, upon his plea of guilty, of burglary in the third degree. 

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

 Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of burglary in the third degree (Penal Law
 140.20). Defendant's contention that the amount of the restitution ordered by County Court is not supported by the record " is not properly before this Court for review because [he] did not request a hearing to determine the [proper amount of restitution] or otherwise challenge the amount of the restitution order[] during the sentencing proceeding' " (People v Peck, 31 AD3d 1216, 1217 [4th Dept 2006], lv denied 9 NY3d 992 [2007], quoting People v Horne, 97 NY2d 404, 414 n 3 [2002]). Defendant further contends that his guilty plea was not knowing, intelligent and voluntary because, prior to entering his plea, he was not advised that he could challenge the constitutionality of his predicate felony conviction in a hearing before being sentenced as a second felony offender. That contention is not preserved for our review inasmuch as defendant did not move to withdraw his guilty plea or to vacate the judgment of conviction (see People v Stokely, 49 AD3d 966, 967 [3d Dept 2008]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Matter of Violet Realty, Inc. v County of Erie???
Violet Realty, Inc., Matter of, v County of Erie???
County of Erie, Matter of Violet Realty, Inc. v???
2018 NYSlipOp 01006
Matter of Violet Realty, Inc. v County of Erie???
Violet Realty, Inc., Matter of, v County of Erie
[\M\N NYS3d \M\N]

In the Matter of Violet Realty, Inc., Respondent Appellant, v County of Erie, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1095 
CA 17-00527 
PRESENT: WHALEN, P.J., SMITH, CARNI, DEJOSEPH, AND CURRAN, JJ. 
 
IN THE MATTER OF VIOLET REALTY, INC., DOING
BUSINESS AS MAIN PLACE LIBERTY GROUP,
PETITIONER-PLAINTIFF-APPELLANT,
 

 V MEMORANDUM AND ORDER
 
COUNTY OF ERIE, MARK C. POLONCARZ, JOHN LOFFREDO,
RESPONDENTS-DEFENDANTS-RESPONDENTS,
ET AL., RESPONDENTS-DEFENDANTS.
 

THE KNOER GROUP, PLLC, BUFFALO (ROBERT E. KNOER OF COUNSEL), FOR PETITIONER-PLAINTIFF-APPELLANT. 

LIPPES MATHIAS WEXLER FRIEDMAN LLP, BUFFALO (JENNIFER C. PERSICO OF COUNSEL), FOR RESPONDENTS-DEFENDANTS-RESPONDENTS.
 

 Appeal from an order and judgment (denominated order) of the Supreme Court, Erie County (E. Jeannette Ogden, J.), entered December 20, 2016 in a CPLR article 78 proceeding and declaratory judgment action. The order and judgment, inter alia, granted the pre-answer motion of respondents-defendants-respondents to dismiss the petition-complaint.

 It is hereby ORDERED that the order and judgment so appealed from is unanimously affirmed without costs.

 Memorandum: This litigation arises from an urban renewal project that began in 1965 in respondent-defendant City of Buffalo (City). At that time, the City, Erie County Savings Bank (Bank), and the Central Buffalo Project Corporation (Developer) entered into an agreement to redevelop a portion of downtown Buffalo. The project included the construction of several buildings, a parking garage, and, as relevant to this appeal, a tunnel that would extend from a street, continue under one of the other buildings that was to be constructed, and connect to the garage, using an easement created as part of the project. The parties agree that, pursuant to the documents that govern the project, the City owns the fee title to the parking garage and possesses the current right to operate the parking garage. In 1999, petitioner-plaintiff (plaintiff) duly exercised an option to acquire fee title to the parking garage, and the parties do not dispute that such title will vest in plaintiff in 2019. In 2016, officials of respondent-defendant County of Erie (County), apparently based on security concerns, blocked all public access to the tunnel. 

 Plaintiff, contending that it obtained an interest in the easement by a series of agreements and conveyances made in 1965, 1969, 1985 and 1995, commenced this litigation seeking, inter alia, relief pursuant to CPLR article 78 and a declaration of its rights in the easement, along with various forms of relief arising from those purported easement rights. Plaintiff appeals from an order and judgment that granted the pre-answer motion of the County and respondents-defendants Mark C. Poloncarz and John Loffredo (defendants) to dismiss the petition-complaint on the ground that plaintiff lacked standing, and dismissed the petition-complaint against all respondents-defendants. We affirm.

 Where, as here, a defendant makes a pre-answer motion to dismiss based on lack of standing, "the burden is on the moving defendant to establish, prima facie, the plaintiff's lack of standing, rather than on the plaintiff to affirmatively establish its standing in order for the motion to be denied" (Deutsche Bank Trust Co. Ams. v Vitellas, 131 AD3d 52, 59-60 [2d Dept 2015]; see e.g. Brown v State of New York, 144 AD3d 88, 92-93 [4th Dept 2016]; Credit Suisse Fin. Corp. v Reskakis, 139 AD3d 509, 510 [1st Dept 2016]). In order "[t]o defeat a defendant's motion, the plaintiff has no burden of establishing its standing as a matter of law; rather, the motion will be defeated if the plaintiff's submissions raise a question of fact as to its standing" (Deutsche Bank Trust Co. Ams., 131 AD3d at 60; see Aurora Loan Servs., LLC v Komarovsky, 151 AD3d 924, 927 [2d Dept 2017]; see e.g. First Franklin Fin. Corp. v Norton, 132 AD3d 1423, 1424 [4th Dept 2015]).

 The warranty deed dated April 4, 1968 from the Bank to the County expressly reserved to the Bank the easement at issue. In the 1968 deed reserving the easement, the Bank conveyed to the County "Lots Number 78 and 79" in the City, but excepted out therefrom a portion of Lot 78 and reserved the subject easement over a different portion of Lot 79, the fee title of which was conveyed to the County by that same instrument. Based upon the limited record submitted by the parties, this conveyance establishes that the parcel conveyed to the County became the servient estate burdened by the easement. Although the Bank and its successor, Empire of America Federal Savings Bank, were parties to various agreements and/or conveyances after 1968, the record does not reflect that the Bank made any subsequent conveyance of the easement at issue to any party to this litigation. Contrary to plaintiff's contention, the 1995 warranty deed from the Developer to plaintiff, under which plaintiff asserts an interest in the subject easement, does not convey the easement.

 We conclude that this record does not contain any instrument of conveyance after 1968 in which the Bank transferred the easement. The parties failed to submit an abstract of title for the Bank's chain of title after 1968, and we are limited to the record prepared by the parties and presently before us. 

 Plaintiff contends in the alternative that its exercise of the option to acquire the parking garage from the City in 2019 confers standing. We reject that contention. The record submitted by the parties does not establish that the real property upon which the parking garage is situated is the dominant estate benefitted by the easement. Even assuming, arguendo, that an exercise of an option to acquire a parcel of real property in the future conferred standing to enforce an easement benefitting a parcel to be acquired, we conclude that on this record the present or future acquisition of the parking garage would not vest in plaintiff any interest in the subject easement.

 We therefore conclude on this record that defendants met their burden on the motion by establishing that plaintiff has no interest in the easement and thus has no standing (see generally Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772-773 [1991]). Inasmuch as "plaintiff's submissions [fail to] raise a question of fact as to its standing" (Deutsche Bank Trust Co. Ams., 131 AD3d at 60), Supreme Court properly granted the motion to dismiss.

 We have considered plaintiff's remaining contentions and conclude that they provide no basis for reversal.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Robinson v Spragues Wash. Sq., LLC???
Spragues Wash. Sq., LLC, Robinson v???
2018 NYSlipOp 01007
Robinson v Spragues Wash. Sq., LLC???
Robinson v Spragues Wash. Sq., LLC
[\M\N NYS3d \M\N]

 Norman Robinson, Respondent Appellant, v Spragues Washington Square, Llc, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1283 
CA 17-00646 
PRESENT: WHALEN, P.J., SMITH, LINDLEY, NEMOYER, AND CURRAN, JJ. 
 
NORMAN ROBINSON, JR.,
PLAINTIFF-APPELLANT-RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
SPRAGUES WASHINGTON SQUARE, LLC, BILL GUGINO
BUILDERS, INC., DEFENDANTS-RESPONDENTS-APPELLANTS, 
AND TIMOTHY GAREY, AN INDIVIDUAL ON BEHALF OF AN
ENTITY TO BE FORMED, DEFENDANT-RESPONDENT.
 

DOLCE PANEPINTO, P.C., BUFFALO (ANNE M. WHEELER OF COUNSEL), FOR PLAINTIFF-APPELLANT-RESPONDENT.

LIPPES MATHIAS WEXLER FRIEDMAN LLP, BUFFALO (BRENDAN H. LITTLE OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT SPRAGUES WASHINGTON SQUARE, LLC AND DEFENDANT-RESPONDENT.

AUGELLO & MATTELIANO, LLP, BUFFALO (JOSEPH MATTELIANO OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT BILL GUGINO BUILDERS, INC. 

 Appeal and cross appeals from an order of the Supreme Court, Cattaraugus County (Michael L. Nenno, A.J.), entered July 7, 2016. The order, among other things, denied that part of plaintiff's motion for partial summary judgment on the issue of liability under Labor Law 240 (1) and granted those parts of the motion of defendant Spragues Washington Square, LLC and the cross motion of defendant Bill Gugino Builders, Inc. for summary judgment dismissing plaintiff's Labor Law
 241 (6) cause of action. 

 It is hereby ORDERED that the order so appealed from is modified on the law by denying those parts of the motion of defendant Spragues Washington Square, LLC and the cross motion of defendant Bill Gugino Builders, Inc. seeking dismissal of the Labor Law 241 (6) cause of action against them insofar as it is based upon the alleged violation of 12 NYCRR 23-1.8 (c) (1) and reinstating that cause of action to that extent, and as modified the order is affirmed without costs.

 Memorandum: Plaintiff commenced this action seeking damages for injuries that he sustained while working on a commercial redevelopment project. The project entailed the conversion of property formerly used for manufacturing into a multifaceted retail space. Plaintiff was injured when he was attempting to install a door frame in an exterior doorway. The frame became stuck, and when plaintiff tried to free it, a steel lintel fell on his head. The lintel was four and a half feet long and weighed 50 pounds.

 The complaint sets forth causes of action alleging violations of Labor Law 200, 240 (1) and 241 (6), and common-law negligence against, inter alia, defendant Spragues Washington Square, LLC (SWS), the owner of the building, and defendant Bill Gugino Builders, Inc. (BGB), which was allegedly the general contractor or the agent of SWS on the project.

 Plaintiff appeals and SWS and BGB cross-appeal from an order that, inter alia, denied that part of plaintiff's motion for partial summary judgment on the issue of liability under Labor Law 240 (1), granted those parts of the motion of SWS and the cross motion of BGB seeking summary judgment dismissing plaintiff's Labor Law 241 (6) cause of action, and otherwise denied the motion of SWS and the cross motion of BGB seeking summary judgment dismissing the complaint and cross claims against them.

 Addressing first BGB's cross appeal, BGB contends, inter alia, that it was entitled to summary judgment dismissing the Labor Law causes of action and related cross claims against it on the ground that, contrary to plaintiff's allegations, it is not subject to liability under the Labor Law as a general contractor or an agent of SWS. We reject that contention. "An entity is a contractor within the meaning of Labor Law 240 (1) and 241 (6) if it had the power to enforce safety standards and choose responsible subcontractors . . . , and an entity is a general contractor if, in addition thereto, it was responsible for coordinating and supervising the . . . project" (Mulcaire v Buffalo Structural Steel Constr. Corp., 45 AD3d 1426, 1428 [4th Dept 2007] [internal quotation marks omitted]). In addition, an entity that serves as "a construction manager may be vicariously liable as an agent of the property owner . . . where the manager had the ability to control the activity which brought about the injury' " (Bausenwein v Allison, 126 AD3d 1466, 1468 [4th Dept 2015]). Here, BGB's own submissions raise triable issues of fact whether BGB had the authority to supervise or control the injury-producing work, and thus whether it may be held liable as a general contractor or an agent of the owner (see Predmore v EJ Constr. Group, Inc., 51 AD3d 1405, 1406 [4th Dept 2008], lv dismissed 10 NY3d 952 [2008]). Contrary to plaintiff's contention on his appeal, however, he failed to establish as a matter of law that BGB was the general contractor or the agent of SWS, and he is therefore not entitled to partial summary judgment on that issue. 

 With regard to plaintiff's Labor Law 200 and common-law negligence causes of action against BGB, we conclude that, contrary to BGB's contention on its cross appeal, it failed to eliminate triable issues of fact whether it had " control over the work site and actual or constructive notice of the dangerous condition' " that allegedly caused plaintiff's injuries (Ozimek v Holiday Val., Inc., 83 AD3d 1414, 1416 [4th Dept 2011]). 

 Contrary to the contentions of SWS and BGB on their cross appeals, Supreme Court properly denied their respective motion and cross motion insofar as they sought summary judgment dismissing the Labor Law 240 (1) cause of action and, contrary to the contention of plaintiff on his appeal, the court properly denied that part of plaintiff's motion seeking partial summary judgment on liability under section 240 (1). The evidence submitted by the parties fails to answer conclusively "the single decisive question" with respect to that cause of action, i.e., "whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (Runner v New York Stock Exch., Inc., 13 NY3d 599, 603 [2009]). Contrary to our dissenting colleagues, we conclude that whether the lintel was installed by plaintiff or by employees of another subcontractor has no bearing on whether SWS and BGB discharged their nondelegable duty under the statute (see generally Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]). Moreover, we cannot agree with the dissent that plaintiff's deposition testimony eliminated triable issues of fact whether the lintel required securing for the purpose of his undertaking. Rather, we conclude that the evidence fails to establish whether the lintel was permanently secured to the building with mortar or temporarily installed on top of the doorframe, and thus triable issues of fact remain "whether a statutorily enumerated protective device would have been necessary or even expected' to shield plaintiff" from the falling lintel (Bush v Gregory/Madison Ave., 308 AD2d 360, 361 [1st Dept 2003]). We also reject the contentions of SWS and BGB that plaintiff's conduct was the sole proximate cause of his injuries based upon his decision to dislodge the door frame by hand rather than by using a sledgehammer that was available at the job site. Triable issues of fact remain whether the lintel was adequately secured before plaintiff attempted to dislodge the door frame (see Quattrocchi v F.J. Sciame Constr. Corp., 11 NY3d 757, 759 [2008]).

 We reject the contention of SWS that the court erred in denying its motion seeking summary judgment dismissing the complaint and cross claims against it in their entirety on the ground that plaintiff was a special employee of SWS and thus is barred by the exclusive remedy provisions of the Workers' Compensation Law from maintaining this action against SWS (see Workers' Compensation Law 11, 29 [6]; Cleary v Walden Galleria, LLC, 145 AD3d 1524, 1525 [4th Dept 2016]). The court properly concluded that triable issues of fact remain whether plaintiff was a special employee of SWS on the project (see generally Thompson v Grumman Aerospace Corp., 78 NY2d 553, 557 [1991]). 

 We agree with plaintiff on his appeal, however, that the court erred in granting those parts of the motion of SWS and the cross motion of BGB dismissing the Labor Law 241 (6) cause of action insofar as it is predicated on a violation of 12 NYCRR 23-1.8 (c) (1). SWS and BGB failed to establish as a matter of law that plaintiff was not working in an "area where there [was] a danger of being struck by falling objects or materials or where the hazard of head bumping exist[ed]" (12 NYCRR 23-1.8 [c] [1]; see Cantineri v Carrere, 60 AD3d 1331, 1333 [4th Dept 2009]). We therefore modify the order accordingly. Contrary to plaintiff's contention, BGB and SWS established their entitlement to judgment dismissing the section 241 (6) cause of action insofar as it is predicated on a violation of 12 NYCRR 23-1.7 (a), and plaintiff failed to raise a triable issue of fact (see Marin v AP-Amsterdam 1661 Park LLC, 60 AD3d 824, 826 [2d Dept 2009]).

 All concur except Nemoyer and Curran, JJ., who dissent in part and vote to modify in accordance with the following memorandum: We respectfully dissent in part. We depart from our colleagues in the majority solely on the ground that we conclude that Supreme Court erred in denying those parts of the motion of defendant Spragues Washington Square, LLC (SWS) and the cross motion of defendant Bill Gugino Builders, Inc. (BGB) seeking summary judgment dismissing the Labor Law 240 (1) cause of action inasmuch as SWS and BGB established as a matter of law that the lintel did not fall on plaintiff as a consequence of the absence or inadequacy of an enumerated safety device. We would therefore further modify the order accordingly.

 It is well settled that "not every object that falls on a worker[] gives rise to the extraordinary protection of Labor Law 240 (1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001]). Here, the evidence submitted by SWS and BGB in support of their motion and cross motion established as a matter of law that the lintel did not "require[] securing for the purposes of the undertaking" (Outar v City of New York, 5 NY3d 731, 732 [2005]), and did not fall because of the absence or inadequacy of a safety device (see Narducci, 96 NY2d at 268-269). Rather, the evidence established that the lintel had previously been installed by another subcontractor, and plaintiff was not in any way involved in that installation. Moreover, SWS and BGB submitted plaintiff's deposition, in which he testified that the type of lintel at issue was the kind that was permanently installed before he performed the framing work. Thus, the lintel had become part of the building's permanent structure upon installation, did not require securing for the purposes of plaintiff's undertaking, and did not fall because of a lack of a safety device. 

 The majority's determination that a question of fact exists whether the lintel was temporarily, as opposed to permanently, installed is based on speculation. The majority's reliance on Bush v Gregory/Madison Ave. (308 AD2d 360, 361 [1st Dept 2003]) is misplaced inasmuch as that case is distinguishable. In Bush, unlike here, safety devices were required because the workers were in the process of securing the lintel in question when it fell and injured the plaintiff ironworker. 

 Finally, in our view, extending the protections of Labor Law
 240 (1) to this case "extends the reach of section 240 (1) beyond its intended purpose to any component that may lend support to a structure" (Fabrizi v 1095 Ave. of the Ams., L.L.C., 22 NY3d 658, 663 
[2014]). 

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Shenoy v Kaleida Health???
Kaleida Health, Shenoy v???
2018 NYSlipOp 01008
Shenoy v Kaleida Health???
Shenoy v Kaleida Health
[\M\N NYS3d \M\N]

 Sadashiv S. Shenoy, Respondent Appellant, v Kaleida Health, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1288 
CA 17-00721 
PRESENT: WHALEN, P.J., SMITH, LINDLEY, NEMOYER, AND CURRAN, JJ. 
 
SADASHIV S. SHENOY, M.D., PLAINTIFF-RESPONDENT, 
 
 V MEMORANDUM AND ORDER
 
KALEIDA HEALTH, ET AL., DEFENDANTS,
AND RALPH BENEDICT, M.D., DEFENDANT-APPELLANT.
 

GIBSON, MCASKILL & CROSBY, LLP, BUFFALO (JOSEPH W. DUNBAR OF COUNSEL), FOR DEFENDANT-APPELLANT. 

GARVEY & GARVEY, BUFFALO (MATTHEW J. GARVEY OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Joseph R. Glownia, J.), entered November 2, 2016. The order denied the motion of defendant Ralph Benedict, M.D. for summary judgment dismissing the complaint against him. 

 It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted, and the complaint against defendant Ralph Benedict, M.D. is dismissed.

 Memorandum: Plaintiff, a doctor employed by defendant Kaleida Health (Kaleida), performed a surgery in which the patient died. As a result of this incident, and pursuant to Kaleida policy, plaintiff underwent a neuropsychological competence assessment by Ralph Benedict, M.D. (defendant). Defendant thereafter submitted a written report detailing his findings and opinions to both Kaleida's internal review body and plaintiff's personal physician. Plaintiff then commenced the instant action and asserted, inter alia, causes of action for defamation and, in effect, tortious interference with economic relations against defendant based on allegations that defendant's written report and associated oral comments damaged plaintiff's reputation and professional and business relationship with Kaleida. Supreme Court denied defendant's motion for summary judgment dismissing the complaint against him. Defendant appeals, and we now reverse.

 We agree with defendant that the court erred in denying that part of his motion with respect to the causes of action for defamation against him. "It is well settled that summary judgment is properly granted [dismissing a defamation cause of action] where a qualified privilege obtains and the plaintiff[] offer[s] an insufficient showing of actual malice" (Trails W. v Wolff, 32 NY2d 207, 221 [1973]). Here, defendant established as a matter of law that his written report and associated oral commentary were protected both by the " common interest' " qualified privilege (Liberman v Gelstein, 80 NY2d 429, 437 [1992]; see Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 60-61 [1959]), and by the statutory qualified privilege of Education Law 6527 (5) (see Colantonio v Mercy Med. Ctr., 135 AD3d 686, 691 [2d Dept 2016], lv denied 28 NY3d 903 [2016]; Cooper v Hodge, 28 AD3d 1149, 1150 [4th Dept 2006]). In opposition, plaintiff failed to raise a triable issue of fact on the issue of actual malice (see Farooq v Coffey, 206 AD2d 879, 880 [4th Dept 1994]). 

 We further agree with defendant that the court erred in denying that part of his motion with respect to the defamation causes of action on the alternative ground that the allegedly defamatory statements are expressions of pure opinion (see Balderman v American Broadcasting Cos., 292 AD2d 67, 72-73 [4th Dept 2002], lv denied 98 NY2d 613 [2002]; Roth v Tuckman, 162 AD2d 941, 942 [3rd Dept 1990], lv denied 76 NY2d 712 [1990]). "Expressions of opinion . . . are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation" (Mann v Abel, 10 NY3d 271, 276 [2008], cert denied 555 US 1170 [2009]).

 Contrary to plaintiff's contention, that part of the motion seeking summary judgment dismissing the defamation causes of action is not premature merely because defendant has not been deposed (see Colantonio, 135 AD3d at 693). " A mere chance that somehow, somewhere, on cross examination or otherwise plaintiff[] will uncover something which might add to [his] case but obviously of which now [he has] no knowledge, is mere speculation and conjecture and is not sufficient' " to establish that a summary judgment motion is premature (Trails W., 32 NY2d at 221).

 Finally, we agree with defendant that his motion also should have been granted with respect to the causes of action for, in effect, tortious interference with economic relations because defendant established as a matter of law that his conduct was "insufficiently culpable' to create liability for [tortious] interference with . . . economic relations" (Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Kracker v O'Connor???
O'Connor, Kracker v???
2018 NYSlipOp 01009
Kracker v O'Connor???
Kracker v O'Connor
[\M\N NYS3d \M\N]

 Pamela M. Kracker, Respondent Appellant, v Liam P. O'Connor, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1289 
CA 17-00868 
PRESENT: WHALEN, P.J., SMITH, LINDLEY, NEMOYER, AND CURRAN, JJ. 
 
PAMELA M. KRACKER AND STEVEN M. KRACKER, 
PLAINTIFFS-RESPONDENTS, 
 
 V MEMORANDUM AND ORDER
 
LIAM P. O'CONNOR, DEFENDANT-APPELLANT. 
 

HAGELIN SPENCER LLC, BUFFALO (MATTHEW D. PFALZER OF COUNSEL), FOR DEFENDANT-APPELLANT. 

ANDREWS, BERNSTEIN, MARANTO & NICOTRA, PLLC, BUFFALO (KENNETH A. SZYSZKOWSKI OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS.
 

 Appeal from an order of the Supreme Court, Erie County (John F. O'Donnell, J.), entered February 21, 2017. The order denied the motion of defendant for summary judgment dismissing the complaint.

 It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting the motion in part and dismissing the complaint, as amplified by the bill of particulars, with respect to the permanent consequential limitation of use and 90/180-day categories of serious injury within the meaning of Insurance Law 5102 (d), and as modified the order is affirmed without costs.

 Memorandum: Plaintiffs commenced this action seeking damages for injuries that Pamela M. Kracker (plaintiff) allegedly sustained as a result of a motor vehicle accident wherein plaintiff's vehicle was stopped at an intersection and was struck from behind by a vehicle owned and operated by defendant. Defendant appeals from an order denying his motion for summary judgment dismissing the complaint on the ground that plaintiff did not sustain a serious injury within the three categories alleged by plaintiffs, i.e., the permanent consequential limitation of use, significant limitation of use, and 90/180-day categories (see Insurance Law 5102 [d]).

 We conclude that defendant met his initial burden on the motion by submitting evidence establishing as a matter of law that plaintiff did not sustain a serious injury under the permanent consequential limitation of use and 90/180-day categories (see Hoffman v Stechenfinger, 4 AD3d 778, 779 [4th Dept 2004]; Cook v Franz, 309 AD2d 1234, 1234-1235 [4th Dept 2003]; Winslow v Callaghan, 306 AD2d 853, 854 [4th Dept 2003]). Defendant submitted the affidavit of a physician who, after examining plaintiff and reviewing plaintiff's imaging studies, medical records and medical history, opined that plaintiff sustained a "sprain and strain" and "soft tissue injuries," which are "not serious and permanent injuries." Plaintiff testified at her deposition that she missed no work as a result of the accident, and her medical records establish that she was medically cleared to work "without restrictions" less than two weeks after the accident. In opposition, plaintiffs failed to raise an issue of fact with respect to the permanent consequential limitation of use and 90/180-day categories (see Griffo v Colby, 118 AD3d 1421, 1422 [4th Dept 2014]; Yoonessi v Givens, 39 AD3d 1164, 1166 [4th Dept 2007]), and we therefore modify the order accordingly.

 We conclude, however, that, although defendant also met his initial burden on the motion with respect to the significant limitation of use category of Insurance Law 5102 (d), plaintiffs raised an issue of fact by submitting the affirmation of their medical expert (see LoGrasso v City of Tonawanda, 87 AD3d 1390, 1391 [4th Dept 2011]). Specifically, after reviewing plaintiff's medical records and imaging studies, plaintiffs' expert opined that plaintiff sustained a superior labral anterior and posterior tear to her right shoulder that required surgery and was causally related to the accident.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Jones v Town of Carroll???
Town of Carroll, Jones v???
2018 NYSlipOp 01010
Jones v Town of Carroll???
Jones v Town of Carroll
[\M\N NYS3d \M\N]

 Carol L. Jones, Respondent Appellant, v Town of Carroll, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1307 
CA 17-00821 
PRESENT: CENTRA, J.P., PERADOTTO, CARNI, DEJOSEPH, AND WINSLOW, JJ. 
 
CAROL L. JONES, AS EXECUTOR OF THE ESTATE
OF DONALD J. JONES, CAROL L. JONES,
JONES-CARROLL, INC., AND SEALAND WASTE LLC,
PLAINTIFFS-RESPONDENTS, 
 
 V MEMORANDUM AND ORDER
 
TOWN OF CARROLL AND TOWN BOARD OF TOWN OF
CARROLL, DEFENDANTS-APPELLANTS.
 

ERICKSON WEBB SCOLTON & HAJDU, LAKEWOOD (PAUL V. WEBB, JR., OF COUNSEL), FOR DEFENDANTS-APPELLANTS.

KNAUF SHAW LLP, ROCHESTER (ALAN J. KNAUF OF COUNSEL), FOR PLAINTIFF-RESPONDENT SEALAND WASTE LLC. 

 Appeal from an order of the Supreme Court, Chautauqua County (Frank A. Sedita, III, J.), entered January 9, 2017. The order, among other things, granted the motion of plaintiff Sealand Waste LLC, to intervene as a plaintiff. 

 It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

 Memorandum: The facts of this case are fully set forth in our decisions on the prior appeals (Jones v Town of Carroll, 32 AD3d 1216 [4th Dept 2006], lv dismissed 12 NY3d 880 [2009]; Jones v Town of Carroll [appeal No. 1], 57 AD3d 1376 [4th Dept 2008], revd 15 NY3d 139 [2010], rearg denied 15 NY3d 820 [2010]; Jones v Town of Carroll [appeal No. 2], 57 AD3d 1379 [4th Dept 2008]; Jones v Town of Carroll, 122 AD3d 1234 [4th Dept 2014], lv denied 25 NY3d 910 [2015] [Jones III]). As relevant to the present appeal, plaintiff Carol L. Jones and her husband, Donald J. Jones (decedent), owned property on a portion of which plaintiff Jones-Carroll, Inc. operated a construction and demolition landfill under permits obtained from the New York State Department of Environmental Conservation (DEC) (see Jones III, 122 AD3d at 1235). Plaintiff Sealand Waste LLC (Sealand) is a potential buyer of the property that had previously entered into an agreement with Jones, decedent, and Jones-Carroll, Inc. providing, among other things, that Sealand would test the suitability of the property for expansion of the landfill on the entire parcel and then enter into contract negotiations to purchase the property. Sealand thereafter applied for, and is still actively pursuing, a DEC permit for the proposed expansion. Sealand was denied a requested federal permit as a result of Local Law No. 1 of 2007 (2007 Law), which had been enacted by defendants and banned the operation of any solid waste management facility in defendant Town of Carroll (Town), but exempted, inter alia, such a facility then in operation pursuant to a permit issued by the DEC under the current terms and conditions of the existing operating permit (see Jones III, 122 AD3d at 1235-1236). Jones, decedent, and Jones-Carroll, Inc. commenced this action challenging the validity of the 2007 Law. Sealand moved to intervene as a plaintiff and submitted a proposed complaint containing the same claims as the first, third, and fifth causes of action in the amended complaint. Defendants appeal from an order that, among other things, granted Sealand's motion. We affirm.

 Upon a timely motion, a nonparty is permitted to intervene as of right in an action involving property where the nonparty "may be affected adversely by the judgment" (CPLR 1012 [a] [3]; see Cavages, Inc. v Ketter, 56 AD2d 730, 731 [4th Dept 1977]). Additionally, after considering "whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party," a court may, in its discretion, permit a nonparty to intervene when, inter alia, the nonparty's "claim or defense and the main action have a common question of law or fact" (CPLR 1013). "Whether intervention is sought as a matter of right under CPLR 1012 (a), or as a matter of discretion under CPLR 1013, is of little practical significance since a timely motion for leave to intervene should be granted, in either event, where the intervenor has a real and substantial interest in the outcome of the proceedings" (Wells Fargo Bank, N.A. v McLean, 70 AD3d 676, 677 [2d Dept 2010]; see Matter of Norstar Apts. v Town of Clay, 112 AD2d 750, 750-751 [4th Dept 1985]).

 Defendants do not contend in their brief that Sealand lacks a real and substantial interest in the outcome of the proceeding or that Sealand's claims lack common questions of law or fact with the main action, and defendants are therefore deemed to have abandoned any such contentions (see Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]).

 Defendants nonetheless challenge the timeliness of the motion. Defendants initially contend that Sealand was too late in seeking leave to intervene because our determination in Jones III, coupled with the parties' subsequent stipulation of discontinuance of the second and fourth causes of action, "effectively dismissed" the action before Sealand sought intervention (see generally Carnrike v Youngs, 70 AD3d 1146, 1147 [3d Dept 2010]). We reject that contention. In Jones III, among other things, we modified the judgment by denying the motion of Jones, individually and as executor for decedent's estate, and Jones-Carroll, Inc. (plaintiffs) for summary judgment with respect to the first, third, and fifth causes of action in the amended complaint and by vacating Supreme Court's declaration that the 2007 Law was null and void and of no force and effect with respect to plaintiffs' use of the property, and we affirmed that part of the judgment denying defendants' cross motion for a determination that the 2007 Law was a proper exercise of the Town's police power that did not violate plaintiffs' rights and required their compliance (122 AD3d at 1236-1237, 1239). "The denial of a motion for summary judgment establishes nothing except that summary judgment is not warranted at [that] time" (Siegel, NY Prac 287 at 487 [5th ed 2011]), and does not constitute an adjudication on the merits (see Metropolitan Steel Indus., Inc. v Perini Corp., 36 AD3d 568, 570 [1st Dept 2007]). Thus, the action has not been finally determined and, contrary to defendants' related contention, the Court of Appeals' denial of leave to appeal in Jones III "has no precedential value" (Matter of Calandra v Rothwax, 65 NY2d 897, 897 [1985]; see Matter of Marchant v Mead-Morrison Mfg. Co., 252 NY 284, 297-298 [1929], rearg denied 253 NY 534 [1930], appeal dismissed 282 US 808 [1930]). In any event, even if a motion to intervene is made after judgment, a court is not precluded from granting such relief in appropriate circumstances (see e.g. Auerbach v Bennett, 64 AD2d 98, 105 [2d Dept 1978], mod on other grounds 47 NY2d 619 [1979]; 112-40 F.L.B. Corp. v Tycoon Collections, Inc., 73 AD3d 719, 721 [2d Dept 2010]; cf. Breslin Realty Dev. Corp. v Shaw, 91 AD3d 804, 804-805 [2d Dept 2012]).

 Contrary to defendants' further contention, the motion was not otherwise untimely. "In examining the timeliness of [a] motion [to intervene], courts do not engage in mere mechanical measurements of time, but consider whether the delay in seeking intervention would cause a delay in resolution of the action or otherwise prejudice a party" (Yuppie Puppy Pet Prods., Inc. v Street Smart Realty, LLC, 77 AD3d 197, 201 [1st Dept 2010]; see Norstar Apts., 112 AD2d at 751). Here, although Sealand did not seek to intervene until several years after it knew its interests in the property may be implicated in the dispute, we conclude that the court did not abuse its discretion in granting the motion inasmuch as Sealand's intervention will not delay resolution of the action and defendants will not suffer prejudice (see Poblocki v Todoro, 55 AD3d 1346, 1347 [4th Dept 2008]; Norstar Apts., 112 AD2d at 751). Sealand does not seek to assert any new claims or to conduct extensive additional discovery but rather, in essence, seeks only to continue the challenge to the 2007 Law on causes of action that remain unresolved despite lengthy litigation (see Poblocki, 55 AD3d at 1347). Where, as here, there is no "showing of prejudice resulting from delay in seeking intervention, the motion should not be denied as untimely" (Norstar Apts., 112 AD2d at 751).

 Finally, defendants' contention that Sealand's motion should be denied on res judicata and collateral estoppel grounds is improperly raised for the first time on appeal (see Matter of Hall, 275 AD2d 979, 979 [4th Dept 2000]) and, in any event, is without merit inasmuch as there has been no final determination on the merits with respect to the first, third, and fifth causes of action in the amended complaint (see generally Yanguas v Wai Wai Pun, 147 AD2d 635, 635 [2d Dept 1989]).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Delphi Healthcare PLLC v Petrella Phillips LLP???
Petrella Phillips LLP, Delphi Healthcare PLLC v???
2018 NYSlipOp 01012
Delphi Healthcare PLLC v Petrella Phillips LLP???
Delphi Healthcare PLLC v Petrella Phillips LLP
[\M\N NYS3d \M\N]

 Delphi Healthcare Pllc, Respondent Appellant, v Petrella Phillips Llp, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1345 
CA 16-02320 
PRESENT: WHALEN, P.J., PERADOTTO, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.

DELPHI HEALTHCARE PLLC, DELPHI HOSPITALIST
SERVICES LLC, WORKFIT MEDICAL, LLC, WORKFIT
STAFFING LLC, AND HEALTHCARE SUPPORT
SERVICES, LLC, PLAINTIFFS-RESPONDENTS,
 
 V MEMORANDUM AND ORDER
 
PETRELLA PHILLIPS LLP AND THOMAS A. PETRELLA, 
DEFENDANTS-APPELLANTS. 
 

LANDMAN CORSI BALLAINE & FORD P.C., NEW YORK CITY (WILLIAM G. BALLAINE OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 

WEBSTER SZANYI LLP, BUFFALO (D. CHARLES ROBERTS, JR., OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS. 

 Appeal from an order of the Supreme Court, Monroe County (Matthew A. Rosenbaum, J.), entered September 22, 2016. The order granted that part of defendants' motion to dismiss with respect to the cause of action for indemnification and contribution. 

 It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting those parts of the motion with respect to the second and fourth causes of action and with respect to the remaining causes of action to the extent that they seek damages for attorneys' fees associated with the underlying class action lawsuit and dismissing the complaint to that extent and as modified the order is affirmed without costs.

 Memorandum: Plaintiffs commenced this action for, inter alia, accounting malpractice and breach of contract, alleging that they had hired defendants as their accountants, in part to ensure that plaintiffs were in compliance with the overtime compensation and wage notice requirements set forth in the Federal Fair Labor Standards Act (FLSA) and New York Labor Law. Plaintiffs allege that defendants failed to provide the aforementioned services, which resulted in a class action lawsuit being commenced against plaintiffs in federal court on behalf of plaintiffs' current and former employees. In the instant action, plaintiffs seek to recover damages for attorneys' fees incurred in the defense and settlement of the underlying class action, as well as damages for loss of business, business reputation, and contract payments. Defendants moved to dismiss the complaint pursuant to CPLR 3211, and defendants now appeal from an order that granted their motion only in part, dismissing the cause of action for indemnification and contribution.

 Defendants contend that Supreme Court should have granted their motion in its entirety because the remaining causes of action and classes of damages constitute requests for indemnification, which are barred by the FLSA. It is well established that "there is no right of contribution or indemnity for employers found liable under the FLSA" (Herman v RSR Sec. Servs. Ltd., 172 F3d 132, 144 [2d Cir 1999]), and the FLSA preempts any conflicting provisions of state labor laws, including those of New York (see id.; see generally Matter of Carver v State of New York, 26 NY3d 272, 284 [2015]). A party may not avoid this bar on indemnity by seeking indemnification damages through other legal theories (see Lyle v Food Lion, Inc., 954 F2d 984, 987 [4th Cir 1992]; Flores v Mamma Lombardis of Holbrook, Inc., 942 F Supp 2d 274, 278 [ED NY 2013]; Gustafson v Bell Atl. Corp., 171 F Supp 2d 311, 328 [SD NY 2001]). In view of the foregoing, we agree with defendants that seeking attorneys' fees associated with that underlying class action is a request for indemnity (see generally Central Trust Co., Rochester v Goldman, 70 AD2d 767, 767-768 [4th Dept 1979], appeal dismissed 47 NY2d 1008 [1979]). We therefore modify the order by granting those parts of the motion seeking dismissal of the complaint to the extent that it seeks damages for attorneys' fees associated with the underlying class action. Contrary to defendants' contention, that determination does not require dismissal of the complaint in its entirety inasmuch as the remaining classes of damages sought by plaintiffs are not barred by the FLSA. Damages for loss of business, business reputation, and contract payments arise directly from the business relationship between plaintiffs and defendants, and awarding such damages does not indemnify plaintiffs for their liability under the FLSA in the underlying class action. 

 Defendants contend, in the alternative, that the second through fourth causes of action, for negligence, breach of contract and breach of fiduciary duty, should be dismissed as duplicative of the first cause of action, for accounting malpractice. We agree with defendants with respect to the negligence and breach of fiduciary duty causes of action, and we therefore further modify the order accordingly.

 Causes of action for negligence, breach of contract and breach of fiduciary duty are duplicative of professional malpractice causes of action where they are based on the same factual allegations and seek similar damages (see Board of Trustees of IBEW Local 43 Elec. Contrs. Health & Welfare, Annuity & Pension Funds v D'Arcangelo & Co., LLP, 124 AD3d 1358, 1360 [4th Dept 2015]; Dischiavi v Calli [appeal No. 2], 68 AD3d 1691, 1693 [4th Dept 2009]; TVGA Eng'g, Surveying, P.C. v Gallick [appeal No. 2], 45 AD3d 1252, 1256 [4th Dept 2007]). Here, the negligence and breach of fiduciary duty causes of action are duplicative of the accounting malpractice cause of action inasmuch as they share the same set of underlying facts and seek the same damages as that cause of action. Moreover, the allegation in the breach of fiduciary duty cause of action that defendants concealed their errors and omissions from plaintiffs does not differentiate that cause of action from the accounting malpractice cause of action inasmuch as "there is no independent cause of action for concealing' malpractice" (Zarin v Reid & Priest, 184 AD2d 385, 387 [1st Dept 1992]).

 Upon construing the complaint liberally, and affording plaintiffs the benefit of every possible favorable inference (see generally Leon v Martinez, 84 NY2d 83, 87-88 [1994]), we reject defendants' contention that the breach of contract cause of action is duplicative of the accounting malpractice cause of action. The breach of contract cause of action is based on allegations that defendants breached their agreements with plaintiffs by failing to perform certain services, and that plaintiffs are entitled to recover all compensation paid to defendants for those unperformed services. That is separate and distinct from the allegations in the accounting malpractice cause of action, which seeks damages based on allegations that defendants did perform services pursuant to the contract but failed to comply with the accepted standards of care.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Stuck v Hickmott???
Hickmott, Stuck v???
2018 NYSlipOp 01013
Stuck v Hickmott???
Stuck v Hickmott
[\M\N NYS3d \M\N]

 George Stuck, Respondent Appellant, v Tracy K. Hickmott, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1349 
CA 17-00804 
PRESENT: WHALEN, P.J., PERADOTTO, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ. 
 
GEORGE STUCK AND KAREN STUCK,
PETITIONERS-RESPONDENTS, 
 
 V MEMORANDUM AND ORDER

TRACY K. HICKMOTT, RESPONDENT-APPELLANT. 
 

MICHAEL STEINBERG, ROCHESTER, FOR RESPONDENT-APPELLANT. 
 

 Appeal from a judgment (denominated amended order) of the Supreme Court, Monroe County (Ann Marie Taddeo, J.), entered August 18, 2016. The judgment, inter alia, granted petitioners a license to enter onto respondent's property for the limited purpose of painting their fence on a biennial basis.

 It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

 Memorandum: After purchasing residential real property abutting respondent's property, petitioners discovered that a narrow portion of respondent's driveway encroached upon their property. Respondent refused petitioners' request to remove the subject portion of the driveway, and petitioners subsequently constructed a six-foot tall wooden stockade fence on their property along the side of the driveway. Respondent thereafter commenced an action for, among other things, a right of adverse possession or, in the alternative, a prescriptive easement, and petitioners counterclaimed seeking judgment directing that respondent remove the encroaching portion of the driveway. In relevant part, Supreme Court granted petitioners' motion for summary judgment dismissing respondent's complaint, and also ordered that respondent be allowed a right of continued use of the driveway as situated and that neither party impair the quiet enjoyment nor obstruct the use of the driveway and fence.

 Although counsel for the parties subsequently negotiated an arrangement whereby petitioners would be permitted to enter respondent's property to paint the fence, a confrontation between the parties on the arranged date resulted in petitioners abandoning their attempt at completing that work. Respondent objected to any future access by petitioners to her property. Petitioners moved by order to show cause for, among other things, an order holding respondent in contempt for denying petitioners' use of the fence and providing petitioners with a right of limited entry onto respondent's property to paint the fence, and the court implicitly converted the motion into a special proceeding under RPAPL 881 (see CPLR 103 [c]; Mindel v Phoenix Owners Corp., 210 AD2d 167, 167-168 [1st Dept 1994], lv denied 85 NY2d 811 [1995]). Respondent appeals from a judgment granting petitioners a license to enter onto her property "for the limited purpose of painting the entire length of their existing wooden fence, once per year in any even numbered year," subject to conditions, including that petitioners had to choose one of two predesignated dates for painting, provide two-weeks prior written notice to respondent, and perform the work between 9:00 a.m. and 12:00 p.m. We affirm.

 RPAPL 881 provides the means by which an owner seeking "to make improvements or repairs to real property" may seek to obtain a license to enter an adjoining owner's property when those "improvements or repairs cannot be made" without such entry and "permission so to enter has been refused" (see Matter of Lincoln Spencer Apts., Inc. v Zeckendorf-68th St. Assoc., 88 AD3d 606, 606 [1st Dept 2011]). The statute requires that "[t]he petition and affidavits, if any, shall state the facts making such entry necessary and the date or dates on which entry is sought" (RPAPL 881). A license to enter the adjoining property "shall be granted by the court in an appropriate case upon such terms as justice requires" (id.) and, "[i]n determining whether or not to grant a license pursuant to [the statute], courts generally apply a standard of reasonableness" (Matter of Board of Mgrs. of Artisan Lofts Condominium v Moskowitz, 114 AD3d 491, 492 [1st Dept 2014]; see Mindel, 210 AD2d at 167). "Courts are required to balance the interests of the parties and should issue a license when necessary, under reasonable conditions, and where the inconvenience to the adjacent property owner is relatively slight compared to the hardship of his [or her] neighbor if the license is refused' " (Board of Mgrs. of Artisan Lofts Condominium, 114 AD3d at 492).

 Respondent contends that the work for which the license was sought is beyond the scope of RPAPL 881 because painting a wooden fence does not constitute an improvement or a repair to real property within the meaning of the statute. We reject that contention. While the statute must be construed narrowly inasmuch as it stands in derogation of common-law property rights (see MK Realty Holding, LLC v Scneider, 39 Misc 3d 1209[A], 2013 NY Slip Op 50551[U], *2 [Sup Ct, Queens County 2013]; see generally Matter of Bayswater Health Related Facility v Karagheuzoff, 37 NY2d 408, 414 [1975]; Hay v Cohoes Co., 2 NY 159, 161-163 [1849]), we conclude that, in the absence of a statutory definition, the usual and commonly understood meaning of the words "improvement" and/or "repair" encompasses the painting of the wooden fence in this case (see Black's Law Dictionary 875-876, 1490 [10th ed 2014]; Sunrise Jewish Ctr. of Val. Stream v Lipko, 61 Misc 2d 673, 675 [Sup Ct, Nassau County 1969]; cf. Chase Manhattan Bank [Natl. Assn.] v Broadway, Whitney Co., 59 Misc 2d 1085, 1086-1087 [Sup Ct, Queens County 1969]; see generally Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016]). That interpretation is supported by the legislative history, which establishes that the legislature in recognition that the nature of abutting properties often requires property owners to access the neighboring property in order to make improvements or repairs to their own intended to encourage such improvements or repairs by removing unreasonable obstacles to efforts to prevent blight and deterioration (Introducer's Mem in Support, Bill Jacket, L 1968, ch 220; see Sunrise Jewish Ctr. of Val. Stream, 61 Misc 2d at 675).

 Contrary to respondent's contention, inasmuch as the statute contemplates that property owners may build on their own property such that improvements or repairs cannot be made without entering an adjoining property, the fact that petitioners ostensibly created the problem by constructing their fence too close to the boundary line does not preclude the court from granting a license (see Sunrise Jewish Ctr. of Val. Stream, 61 Misc 2d at 675).

 Contrary to respondent's further contention, the averments in petitioners' affidavit, together with the photographs attached thereto depicting the nature and positioning of the fence, adequately set forth the facts making entry onto respondent's property necessary to effectuate the requested biennial painting of the wooden fence (see Mindel, 210 AD2d at 167; cf. Lincoln Spencer Apts., Inc., 88 AD3d at 606). Given that the inconvenience to respondent of such infrequent and brief entries to facilitate an unexceptional task is relatively slight compared to petitioners' hardship if the license is refused, i.e., an ill-maintained fence subject to deterioration, we conclude that the court properly balanced the interests of the parties by granting petitioners a limited license to enter respondent's property under reasonable conditions, the propriety of which respondent does not otherwise challenge (see Mindel, 210 AD2d at 167; see generally Board of Mgrs. of Artisan Lofts Condominium, 114 AD3d at 492).

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court

Jimerson v State of New York???
State of New York, Jimerson v???
2018 NYSlipOp 01014
Jimerson v State of New York???
Jimerson v State of New York
[\M\N NYS3d \M\N]

 Joshua A. Jimerson, Respondent Appellant, v State of New York, Respondent Appellant.

 SUPREME COURT OF THE STATE OF NEW YORK
 Appellate Division, Fourth Judicial Department

1350 
CA 16-01924 
PRESENT: WHALEN, P.J., PERADOTTO, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ. 
 
JOSHUA A. JIMERSON, AS ADMINISTRATOR OF THE
ESTATE OF PATRICIA A. JOHN, DECEASED,
CLAIMANT-APPELLANT, 
 
 V MEMORANDUM AND ORDER
 
STATE OF NEW YORK, DEFENDANT-RESPONDENT. 
(CLAIM NO. 121778.)
------------------------------------------- KENNETH VAN AERNAM, CLAIMANT-APPELLANT,

 V

STATE OF NEW YORK, DEFENDANT-RESPONDENT.
(CLAIM NO. 121782.)
 

LAW OFFICE OF JOEL L. DANIELS, BUFFALO (JOEL L. DANIELS OF COUNSEL), FOR CLAIMANTS-APPELLANTS.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (KATE H. NEPVEU OF COUNSEL), FOR DEFENDANT-RESPONDENT.

LIPPES MATHIAS WEXLER FRIEDMAN LLP, BUFFALO (CAROL E. HECKMAN OF COUNSEL), FOR SENECA NATION OF INDIANS AND SAINT REGIS MOHAWK TRIBE, AMICI CURIAE.
 

 Appeal from an order of the Court of Claims (Michael E. Hudson, J.), entered June 2, 2016. The order, insofar as appealed from, denied that part of the motion of claimants for partial summary judgment on the issue of defendant's duty under Highway Law 53. 

 It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law without costs, and that part of the motion seeking partial summary judgment on the issue of defendant's duty under Highway Law 53 is granted.

 Memorandum: Claimants commenced their respective actions seeking to recover damages for the wrongful death of Patricia A. John and the injuries sustained by claimant Kenneth Van Aernam when they fell through a hole on the Red House Bridge (RHB). The RHB is a four-span Warren truss bridge, which was built by defendant State of New York (State) in 1930 as part of the former State Highway 1854. There is no dispute that the RHB is located within the sovereign nation of the Seneca Nation of Indians (Seneca Nation), but confusion over who is responsible for the maintenance of the RHB dates back to as early as 1966. 

 On July 25, 1976, a Memorandum of Understanding (MOU) was signed by the New York State Department of Transportation (DOT) and the Seneca Nation. Therein, the DOT agreed to "maintain roads located within the boundaries of the Nation's reservations, and for which the [DOT] and the State . . . are obligated to provide maintenance." In July 1980, the DOT issued Official Order No. 1261, which provides in pertinent part that "[t]he State shall discontinue maintenance and jurisdiction over[, inter alia, State Highway 1854], or sections thereof, including any and all bridges and culverts located thereon as have been maintained by the State as part of the State highway system and effective April 1, 1980, these highways shall be maintained as Reservation roads pursuant to Section 53 of the Highway Law." On December 14, 2007, the DOT and the Seneca Nation signed a Project Specific Agreement (PSA) regarding the RHB. The PSA provides that the DOT, "pursuant to the [MOU], is willing to undertake a contract to remove, realign, and replace such Bridge and rehabilitate such roadway at no expense to the Nation." As authority for the DOT's commitment to replace the RHB, the PSA cites Highway Law 53. The PSA also provides that, "[d]ue to the advanced structural deterioration of the [RHB], it is anticipated that the existing [RHB] will be considered unsafe for usage by vehicular traffic, and possibly may also be considered unsafe for usage by pedestrian traffic, and may accordingly be closed and barricaded." The parties anticipated that the project would be completed in "approximately 34.5 months." Although the PSA was signed in December 2007, the project had been significantly delayed and was not completed when Van Aernam and John fell through a hole on the RHB in 2012.

 After commencing these actions, claimants jointly moved for partial summary judgment pursuant to CPLR 3212 on the issue of liability. The Court of Claims denied the motion, and explained, inter alia, that it "cannot find as a matter of law that the State possessed a duty to maintain the [RHB]."

 We agree with claimants that the court erred in denying that part of their motion seeking a determination that the State had a statutory duty to maintain the RHB. Highway Law 53 obligates the State to maintain highways and bridges that it constructed on Indian reservation land, inasmuch as the statute expressly provides that "[t]he [DOT] shall have supervision and control, in the construction, maintenance and improvement of all highways and bridges constructed or to be constructed by the [S]tate on any Indian reservations." Thus, we conclude that Highway Law 53 creates an unambiguous duty, with no temporal limitation, for the State to maintain the RHB. We note that the State's prior conduct, including signing the MOU in 1976, issuing the DOT Official Order No. 1261 in 1980, and signing the PSA in 2007, is consistent with our determination that Highway Law 53 requires that the State maintain the RHB.

 Although claimants raised additional issues in their appellate brief, their counsel withdrew those challenges at oral argument of this appeal, and thus we limit our review to the contention discussed above. We therefore reverse the order insofar as appealed from and grant that part of the motion seeking partial summary judgment on the issue of the State's duty under Highway Law 53.

Entered: February 9, 2018
Mark W. Bennett

Clerk of the Court